IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| LEON MCKINLEY DICKERSON, SR., )<br>　　　Plaintiff,　　　　　　　　　　　　)<br>　　　　　　　　　　　　　　　　　　　　)<br>v.　　　　　　　　　　　　　　　　　　)<br>　　　　　　　　　　　　　　　　　　　　)<br>MAJOR SCHMITT, *et al.*,　　　　　　)<br>　　　Defendants.　　　　　　　　　　　) | Civil Action No. 7:23-cv-00068<br><br>By: Elizabeth K. Dillon<br>　　　United States District Judge |

**MEMORANDUM OPINION**

Leon McKinley Dickerson, Sr., an inmate in the custody of the Blue Ridge Regional Jail's Amherst County Adult Detention Center ("ACADC") and proceeding *pro se*, commenced this civil action under 42 U.S.C. § 1983. The case is before the court for review pursuant to 28 U.S.C. § 1915A(a) and 42 U.S.C. § 1997e(c). For the reasons set forth below, the court concludes that Dickerson has failed to state a claim for which relief can be granted against the named defendants, and his claims must be dismissed.

I.　BACKGROUND

Dickerson's complaint names two defendants: Major Schmitt, who he identifies as the administrator of ACADC, and the ACADC "Head Nurse's Department." He does not identify any portion of the U.S. Constitution that he believes was violated, and the complaint is not organized by topic or claim. Instead, it just sets forth facts that allegedly happened on different days, similar to a journal. As best the court can tell, his primary factual allegations fall into three general categories.

First, he believes that the air quality at ACADC is poor, that it sometimes has extremely unpleasant odors, and that he has experienced physical symptoms as a result of the smells and air quality. This category of claims is based on several different incidents and time periods. He alleges that, on an unspecified date, the air system "went off" in Unit E. As a result, his nose

began to run, his eyes got watery, and he began to sneeze. He states that after the heat and air started back up, he began to smell mildew, urine, and feces in the air. He wrote a grievance about the issue, but was told by the site administrator, Major Schmitt, that it was a medical issue and he should submit his complaint to medical. Dickerson believes that it is "a maintenance issue as well." (Compl. 2.)

His complaint does not identify how long the problems with the air system lasted in E Unit. On some unspecified date, though, he and the rest of the unit was moved to Unit C-1. On December 9, 2022, he asked for a mask because he was still smelling urine, feces, and mildew, but he did not get a mask until December 28, 2022, when there was a concern over a potential COVID-19 outbreak. (Compl. Ex. 1, Dkt. No. 1-1, at 1.)

Also, at some unspecified point in either late December or January, Dickerson again began to smell feces, urine and dust particles in the air, and he was "very sick." His sinuses started to close up, his nose was sore and bleeding, his eyes were watery, his ears got infected, and his blood pressure began to rise, making his legs swell. He states that he is still experiencing some of these symptoms. He also notes that as of January 25, 2023, he can still smell urine and feces back up in the toilet. He alleges that "the vents or filters still haven't been changed or cleaned." (Compl. Ex. 1, Dkt. No. 1-1, at 1–2.)

Dickerson further describes, in a separate attachment to the complaint, a January 25, 2023 incident when inmates were refusing trays that were cold and had been reheated. In response to the refusal, Major Schmitt directed the day shift lieutenant to lock down the inmates. When other inmates in Dickerson's unit did not lock down as directed, they were "sprayed" with mace. Dickerson was not maced, nor did he get a disciplinary charge, but he was upset because the heat

and air were cut off for the night, apparently as a punishment.[1] (Compl., Ex. 2, Dkt. No. 1-1, at 3.) Thus, this incident, too, is part of his complaint about the air quality.

The second general category of allegations arises from events related to a COVID-19 outbreak and a subsequent lockdown. Specifically, Dickerson states that staff began testing inmates for COVID-19 on December 28, 2022. People started to get sick, and eight people tested positive for COVID-19. Although Dickerson did not test positive, his cellmate and others did. He states that he was mistakenly locked down for 10 days, even though he had not tested positive. He was then moved to a different cell in the same unit with positive inmates, which also was apparently a mistake. Then, during the ten-day lockdown, he did not get to exercise outside of the cell and only was permitted to shower on Tuesdays and Thursdays. He does not allege that he ever tested positive for COVID-19 or became ill from that disease. (Compl., Ex. 1, Dkt. No. 1-1, at 1.)

In a third group of allegations, Dickerson complains that it took two weeks to see the doctor for his rising blood pressure and to get medication and that the medication finally started "slowly maybe working" on January 22, 2023. During that two-week period, however, he states that some nurses (whom he does not identify by name) did not take his blood pressure as directed by the doctor, but other nurses did. This appears to be the basis for naming the "Head Nurse's Department" as a defendant.[2] (Compl. Ex. 1, Dkt. No. 1-1, at 1–2.)

---

[1] It does not appear to the court that Dickerson is complaining specifically about the supposed "punishment." Nonetheless, to the extent he is saying that turning off the heat or air for the night was improper discipline or violated his due process rights, he has not alleged conditions sufficient to implicate a liberty or property interest. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995) (explaining that to establish a constitutionally protected liberty interest, an inmate must show an "atypical and significant" hardship or deprivation in relation to the ordinary incidents of prison life).

[2] His complaint also makes a passing reference to retaliation, but he does not identify what act or acts—or by whom—he believes were retaliatory. Any retaliation claim fails for that reason alone. Lastly, he discusses issues with accessing a tablet, on which he receives his mail and can access the library. The allegations about the tablet were included in a separate lawsuit he filed, however, which already has been dismissed by the court. *See Dickerson v. Global Tel Link Corp.*, No. 7:23-cv-00082, 2023 WL 3026735 (W.D. Va. April 20, 2023). Because those allegations are duplicative and already have been dismissed, the court does not treat them as part of this case.

As noted, Dickerson's complaint does not reference any particular constitutional amendment and does not title his claims. The court construes his complaint as asserting Eighth Amendment conditions-of-confinement claims based on the poor air quality and the events related to his placement during the COVID-19 lockdowns. The claims regarding his blood pressure the court construes as an Eighth Amendment claim that unidentified nurses were deliberately indifferent to his serious medical need.

For relief, Dickerson asks for an injunction requiring that ACADC clean the vents and sewer, and that the quality of the air be tested weekly. He also seeks $130,000 in nominal and compensatory damages "as well as future doctor's appointments." (Compl. 3.)

## II. DISCUSSION

Pursuant to 28 U.S.C. § 1915A(a), the court must conduct an initial review of a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." *See also* 42 U.S.C. § 1997e(c)(1) (requiring the court to dismiss any § 1983 case brought with respect to "prison conditions" if it is frivolous or fails to state a claim upon which relief can be granted). Pleadings of self-represented litigants are given a liberal construction and held to a less stringent standard than formal pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). Liberal construction does not mean, however, that the court can ignore a clear failure in pleadings to allege facts setting forth a claim cognizable in a federal district court. *See Weller v. Dep't of Social Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). Applying these standards to Dickerson's complaint, the court concludes that it fails to state a claim for which relief can be granted. Thus, it must be summarily dismissed pursuant to 28 U.S.C. § 1915A(b)(1) and 42 U.S.C. § 1997e(c)(1).

### A. Named Defendants

As an initial matter, Dickerson fails to state a claim against either defendant he has

named. To state a claim under § 1983[,] a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Loftus v. Bobzien*, 848 F.3d 278, 284–85 (4th Cir. 2017) (internal quotation marks omitted). But liability under § 1983 is "personal, based upon each defendant's own constitutional violations." *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (internal citation omitted). Thus, a § 1983 claim requires factual detail about each defendant's personal involvement. *See Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017) (explaining that liability will lie under § 1983 only "where it is affirmatively shown that the official charged acted personally" in the violation of plaintiff's rights and affirming dismissal of claim where plaintiff did not allege personal involvement by defendant) (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)); *see also Iqbal*, 556 U.S. at 676 (noting that "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"). To survive dismissal, then, a plaintiff's § 1983 claim must include "specific factual allegations for each defendant." *Langford v. Joyner*, 62 F. 4th 122, 125 (4th Cir. 2023).

The only specific action Dickerson attributes to Major Schmitt is that Schmitt responded to his grievance concerning the air quality and setting forth his physical symptoms by directing him to make a request of the medical department. But "a prison official's act of responding to a grievance generally does not cause or contribute to a constitutional violation . . . particularly" when the grievance complained of past or completed misconduct. *Hoglan v. Robinson*, No. 7:16-CV-00595, 2022 WL 909041, at *2 (W.D. Va. Mar. 28, 2022) (citing *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007)). When a grievance alleges an ongoing violation of an inmate's rights, however, and the official reviewing the grievance has the power to remedy it, then that official may be liable for a constitutional violation. *Id.* at *2–*3 (citing *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985)). Here, although arguably the issues with the heat and air conditioning were

5

ongoing, Dickerson's grievance complained of medical symptoms. In response, Schmitt told Dickerson to put in a medical request. That does not show deliberate indifference on Schmitt's part. Thus, his response to the grievance, without more, is insufficient to constitute an eighth amendment violation. *See id.*

The second defendant—ACADC Head Nurse's Department—is not a legal entity and is not a proper defendant to a § 1983 action. *See Wells v. S.C.D.F. Emps.*, No. CA 2:10-3111-CMC-BHH, 2011 WL 2472512, at *2 (D.S.C. May 19, 2011) (collecting authority for the proposition that group defendants such as "medical staff" are not proper defendants under § 1983), *report and recommendation adopted*, No. CA 2:10-3111-CMC-BHH, 2011 WL 2463066 (D.S.C. June 21, 2011). Thus, the court will dismiss all claims against it.

**B. Eighth Amendment Conditions-of-Confinement Claims**

Dickerson's claims also fail to state a claim for which relief can be granted, even if he had named a proper defendant. The Eighth Amendment protects prisoners from cruel and unusual living conditions. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). But "the Constitution does not mandate comfortable prisons," and conditions that are "restrictive and even harsh . . . are part of the penalty that criminal offenders pay for their offenses against society." *Id.* at 347–49. To sustain an unconstitutional conditions claim, a prisoner must show that: (1) objectively, the deprivation was sufficiently serious, in that the challenged, official acts caused denial of "the minimal civilized measure of life's necessities"; and (2) subjectively, the defendant prison officials acted with "deliberate indifference to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citations omitted).

To satisfy the first element, the prisoner must show "significant physical or emotional harm, or a grave risk of such harm," resulting from the challenged conditions. *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995). To establish the second element of deliberate indifference, a

plaintiff must show that the defendant was personally aware of facts indicating a substantial risk of serious harm and that the defendant must have actually recognized the existence of such a risk. *See, e.g., Farmer*, 511 U.S. at 838–40; *Conner v. Donnelly*, 42 F.3d 220, 222 (4th Cir. 1994). The plaintiff also must show that the defendant subjectively recognized that his actions were inappropriate in light of that risk. *Parrish v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (citation omitted).

Dickerson's complaint fails to satisfy these standards. Most significantly, it fails to identify a deprivation that is sufficiently serious so as to deprive him of "the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834. He also has not identified any "significant emotional or physical harm," nor do the conditions about which he complains appear to create a "grave risk" of any such harm. *See Shakka*, 71 F.3d at 166. The court briefly discusses each of the challenged conditions.

**1. Poor air quality and unpleasant odors**

Dickerson's allegations regarding the smells to which he was subjected are unpleasant and unfortunate, and it is true that, in some cases, an exposure to human waste can give rise to an Eighth Amendment claim. However, "the mere smell or presence of human waste is not sufficiently serious to constitute a violation of the Eighth Amendment." *Salmons v. W. Reg'l Jail Auth.*, Civil Action No. 3:18-1447, 2019 WL 5616916, at *6 (S.D. W. Va. Oct. 30, 2019). "Cases where similar conditions have been found to be an objectively serious deprivation sufficient to violate the protections provided by the Eighth Amendment generally involve either prison officials acting deliberately in creating the unsanitary conditions, the conditions lasting for an extended and unreasonable amount of time, or both." *Whitmore v. W. Reg'l Jail*, No. 3:18-CV-01483, 2019 WL 3756396, at *8 (S.D.W. Va. July 19, 2019), *report and recommendation adopted,* 2019 WL 3759806 (S.D.W. Va. Aug. 7, 2019) (collecting cases). Given these

standards, Dickerson has not sufficiently alleged an Eighth Amendment violation based on the smells he had to endure for temporary—but unspecified—amounts of time. *See Whitmore*, 2019 WL 3756396, at *7–8 (collecting cases); *Salmons*, 2019 WL 5616916, at *6.

Notably, Dickerson does not allege that he came into direct physical contact with human waste at all, let alone for an "extended and unreasonable amount of time." *Cf. Whitmore*, 2019 WL 3756396, at *8. Rather, he complains about repeated instances, when the air or heat was turned off, that he smelled urine, feces, and mold. And although he states he experienced some symptoms, those injuries do not rise to the level of "cruel and unusual punishment" in violation of the Eighth Amendment. *See, e.g., Harris v. FNU Connolly,* No. 5:14-cv-128-FDW, 2016 WL 676468, at *5 (W.D.N.C. Feb. 18, 2016), *aff'd*, 667 F. App'x 408 (4th Cir. 2016) (holding that unsanitary cell conditions, including the presence of feces, urine, and vomit was less than ideal, but "[s]hort-term sanitation problems, while unpleasant, do not amount to constitutional violations") (citation omitted); *DePaola v. Ray*, No. 7:12CV00139, 2013 WL 4451236, at *10 (W.D. Va. July 22, 2013), *report and recommendation adopted*, 2013 WL 4453422 (W.D. Va. Aug. 16, 2013) (finding that the plaintiff's claim that he "suffered from nausea [and psychological trauma] due to the smell of other prisoners smearing their feces/urine while in the B–3 pod" did not demonstrate a violation of a basic human need or a sufficiently serious or significant injury); *Hubbard v. Kanode*, No. 7:06-CV-00679, 2006 WL 3476656, at *1 (W.D. Va. Nov. 30, 2006) (holding that the plaintiff's allegation that he was exposed to the smell of human waste for 26 days, which caused nose bleeds and sores in his nose, did not state a claim under the Eighth Amendment, explaining "[t]he Court does not doubt that Hubbard's exposure to the smell of human waste was unpleasant and unappetizing. However, even assuming that Hubbard experienced nose bleeds and sores as a result of the smell, as he alleges, such impairments do not rise to the level of a serious or significant physical injury."). Thus,

8

Dickerson has failed to satisfy the objective element of an Eighth Amendment claim, and his claim fails.

2. **COVID-19-related claims and improper lockdown**

Dickerson's COVID-19-related claims fail for several reasons. First, as already discussed, he fails to identify any particular defendant who improperly locked him down or who engaged in the conduct he challenges. Second, to the extent he was put in the wrong group or should have been separated from COVID-positive inmates, his own allegations describe this as a "mistake." And negligence is insufficient to impose liability under the Eighth Amendment. *See Farmer*, 511 U.S. at 838–40 (requiring subjective awareness of a risk and deliberate indifference toward it); *Estelle*, 429 U.S. at 106 (explaining that mere negligence or malpractice does not rise to the level of a constitutional violation). Dickerson simply has not alleged that any person *knew* he was being housed with COVID-positive inmates and at risk of contracting the disease, but failed to take any action to alleviate that risk. Indeed, he does not state that he complained to anyone about any mistake or mix-up in lockdowns. Thus, he has not alleged facts sufficient to support the second element of an Eighth Amendment claim. He also does not allege that he ever contracted COVID-19 or became ill from it. Accordingly, he has not alleged that he suffered a "significant physical or emotional harm" either, as required to state a claim. *Cf. Shakka*, 71 F.3d at 166. This claim fails.

3. **Limitations on showers and recreation while on lockdown**

Dickerson's allegations regarding his ten-day period of lockdown are that he was denied recreation and out-of-cell time, which meant he was unable to exercise out of his cell, and he was only permitted to shower on Tuesdays and Thursdays. Being denied the ability to leave one's cell and the denial of exercise opportunities, at least where it lasts for an extended period of time, can give rise to an Eighth Amendment violation. *Mitchell v. Rice*, 954 F.2d 187, 191 (4th Cir.

9

1992) (explaining that while the denial of out-of-cell exercise opportunities is not *per se* unconstitutional, a "complete deprivation of exercise for an extended period of time violates [the] Eighth Amendment"). In *Mitchell*, the court concluded that seven months without out-of-cell exercise could potentially violate constitutional standards and that officials were not entitled to qualified immunity on the issue. *Id.* at 191–93; *see also Lyles v. Stirling*, 844 F. App'x 651, 654 (4th Cir. 2021) ("Denying an inmate out-of-cell exercise for 10 months is objectively serious under the Eighth Amendment.").

"In considering the totality of the circumstances" surrounding such denials, the court must "look at the 'overall duration of incarceration, the length of time for which prisoners are locked in their cells each day, and the practical opportunities for the institution to provide prisoners with increased exercise opportunities.'" *Lyles*, 844 F. App'x at 653 (quoting *Mitchell*, 954 F.2d at 191). The duration here—ten days—is significantly shorter than cases where courts have found a potential violation. *Compare Mitchell*, 954 F.2d at 191–93; *Lyles*, 844 F. App'x at 654. Further, the ten-day lockdown was implemented to stop the spread of a contagious disease. For such a brief period, and given that multiple inmates were sick, allowing additional opportunities for those inmates to be out of their cells would run counter to that goal. And again, Dickerson does not allege any harm or injury (or any risk of grave harm or injury) from this brief denial of recreation and out-of-cell opportunities.

Similarly, his claim regarding being limited to two showers a week, for a total period of less than two weeks, does not offend the Eighth Amendment. As the Fourth Circuit explained in *Rivera v. Mathena*, 795 F. App'x 169 (4th Cir. 2019), in determining whether the objective prong of a plaintiff's Eighth Amendment claim is satisfied, the duration of the deprivation is important:

> A restriction to two showers or exercise periods per week might not violate the Eighth Amendment if confined to a relatively short

10

>   period of maximum confinement, but if extended over a period of
>   years and perhaps indefinitely, the rule may be quite different. . . .
>   For example, three days without showers might not violate the
>   Eighth Amendment, *see Shakka v. Smith*, 71 F.3d 162, 167–68 (4th
>   Cir. 1995), whereas two months without showers and recreation
>   can be sufficient to support an Eighth Amendment claim.  *See
>   Brown v. Lamanna*, 304 F. App'x 206, 208 (4th Cir. 2008)
>   (unpublished).

795 F. App'x at 174 (some internal citations and quotations omitted).  Here, Dickerson complains about a ten-day period, during which he was on a lockdown to prevent the spread of a disease, and he was allowed only two showers per week.  That falls squarely on the side of cases like *Shakka* and is not so objectively extreme as to constitute an Eighth Amendment violation.

**C.  Eighth Amendment Deliberate Indifference to Medical Condition**

In the claim against the unidentified nursing personnel, Dickerson claims that he went for a period of two weeks without having his blood pressure regularly tested before he was seen by the doctor and given medicine.  He is now apparently on medicine, which he acknowledges is working.

With regard to medical conditions, and to demonstrate deliberate indifference of a constitutional magnitude, an inmate must show that (1) he has a medical condition that has been "diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention" and (2) the defendant "had actual knowledge of the plaintiff's serious medical needs and the related risks, but nevertheless disregarded them." *Gordon v. Schilling*, 937 F.3d 348, 356–57 (4th Cir. 2019).  The first component is an objective inquiry and the second is subjective. *Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209–10 (4th Cir. 2017).

Courts have recognized that high blood pressure can constitute a serious medical need. *Raybon v. Williamson*, No. 5:21-cv-00169-MR, 2022 WL 16579813, at *3 (W.D.N.C. Nov. 1, 2022) (recognizing that untreated hypertension can constitute a serious medical need); *Kovari v.*

11

*Brevard Extraditions, LLC*, 461 F. Supp. 3d 353, 386 (W.D. Va. 2020) (noting that hypertension diagnosed by a medical professional and being treated with daily mediation was a serious medical need); *Barnes v. Bilak*, Civil Action No. JKB-17-1057, 2018 WL 2289232, at *6 (D. Md. May 17, 2018) ("[H]ypertension is a serious medical need and the failure to treat the same, if done with the requisite intent, would present a colorable Eighth Amendment claim.").

But Dickerson provides few details as to the extent of his high blood pressure. He states that he was told his blood pressure would be monitored, but it was not checked during some of the days of a two-week period before he saw the doctor. He was then prescribed medication to treat it, which is working. Thus, it appears he was receiving treatment before he ever filed this lawsuit. At most, then, he is complaining about a *delay* in treatment, rather than a denial of treatment.

The Fourth Circuit, in several unpublished decisions, has held that where a prisoner's claim is based on a delay in treatment, he must show that the delay caused him to suffer "substantial harm." *Webb v. Hamidullah*, 281 F. App'x 159, 166 (4th Cir. 2008). *See also Formica v. Aylor*, 739 F. App'x 745, 755 (4th Cir. 2018) (explaining that where a claim is based not on a denial of medical care, but a claim that the care has been delayed, "we have ruled that there is no Eighth Amendment violation unless 'the delay *results* in some substantial harm to the patient,' such as a 'marked' exacerbation of the prisoner's medical condition or 'frequent complaints of severe pain'") (citing *Webb*, 281 F. App'x at 166-67 and *Sharpe v. S.C. Dep't of Corr.*, 621 F. App'x 732, 734 (4th Cir. 2015)). The *Formica* court further noted that both *Webb* and *Sharpe* are "consistent . . . with the precedent of other courts of appeals." *Formica*, 739 F. App'x at 755 (citations omitted). Dickerson has not alleged any substantial harm as a result of the two-week delay in treatment, and his claim fails for this reason alone.

Furthermore, as noted, for any defendant to be held individually liable for the delay in

treating his high blood pressure, or the failure to monitor it, Dickerson must allege facts to show that the defendant had actual knowledge of his high blood pressure or the symptoms of it, and failed to take any response. *See Gordon*, 937 F.3d at 356–57 (emphasizing that a defendant violates the Eighth Amendment only when he has *actual* knowledge of the plaintiff's medical condition and disregards any need for treatment). Dickerson has not alleged facts to show that any particular person (and none named as a defendant) had actual knowledge that his blood pressure was high and failed to take steps to address it. Thus, he has failed to state a deliberate indifference claim against anyone with regard to his blood pressure.

Additionally, to the extent that any nurse mistakenly failed to check his blood pressure, such negligence, without more, does not violate the Eighth Amendment. As the Fourth Circuit has explained, "negligent medical diagnoses or treatment, without more, do not constitute deliberate indifference." *Webb*, 281 F. App'x at 166. Even if someone in the medical department was negligent for not ensuring that Dickerson's blood pressure was checked on some of the days he was to be monitored, that action does not amount to deliberate indifference. Instead, the treatment must be "so grossly incompetent, inadequate, or excessive as to shock the conscience." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990), *overruled in part on other grounds by Farmer*, 511 U.S. at 837. Missing a few days of monitoring over a two-week period, particularly where he was promptly treated with medication once he was seen by a physician at the end of that period, does not satisfy that high standard.

For all of these reasons, his third claim, based on an alleged failure to check his blood pressure on some days during a two-week period, does not state a constitutional violation.

## III. CONCLUSION

For the foregoing reasons, the court concludes that Dickerson's complaint fails to state a claim upon which relief may be granted. Accordingly, the court will summarily dismiss Dickerson's complaint, pursuant to 28 U.S.C. § 1915A(b)(1) and 42 U.S.C. § 1997e(c)(1).

An appropriate order will be entered.

Entered: May 30, 2023.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge